May it please the court, Kenneth Carpenter appearing on behalf of Mr. Dale Dunlap. Nice to see you, Mr. Carpenter. Thank you very much, Your Honor. May it please the court, Mr. Dunlap appeals the Veterans Court asserting that the court below erred by failing to follow its own rule of law as established in the Rice v. Shinseki case decided in 2009. Mr. Dunlap, in his argument to the court below, argued that the board had impermissibly narrowed the scope of his claim. Mr. Dunlap relied upon the rules set out by the Veterans Court in 2009 in Rice. Rice created a rule of law establishing the proposition that the issue of an initial rating to be assigned and the issue of entitlement to an extra schedule or rating based upon unemployability were part and parcel of the same claim. Did Rice prohibit separate consideration of TDIU and a different schedule or rating? I don't know that it expressly prohibited it. No, I don't think it did at all. No. So why does Rice govern us here? Because Rice stands for the proposition that there is simply one claim here, that Mr. Dunlap has not initiated a second litigation in order to circumvent the determination that was previously made by the board in this case as it related to the scheduler rating assigned. Rice applies because it establishes the proposition that there was only one claim here and that that one claim has multiple issues, the issues of the scheduler rating to be assigned and the issue of whether an extra schedule or rating should be assigned. Would that preclude the board from separating those two issues if it wants to? Well, in fact, what happened here was that the board, in fact, separated them. The board, when this case came before the board for the first time, addressed only the scheduler consideration and remanded for consideration of the extra scheduler. It is our position that under the rule in Rice, the board should have deferred consideration of the scheduler and awaited the determination below on the question of extra schedule. But Rice doesn't tell them how to do their job, does it? No, it does not tell them how to do their job. Why should we? Why should we tell them you have to do your job this way? Because that's consistent with the rule established in Rice. But not required by the rule in Rice. But it is implicitly required in the rule in Rice because there's only one claim. The basis for the ruling that is being appealed is race judicata, that somehow there were, in fact, two claims in play here, and that claim one was decided and precludes reconsideration based upon the determination that was later made based upon the issue of unemployability. But even if there is only one claim, and there are different theories here for an amount, that there's nothing in Rice that mandates that those theories be considered at the same time. No, your honor, nor is there anything that precludes it. And that is what was done here by the board. When it got the package back, finally, in the decision that was on appeal to the court below, addressed only the issue of extra scheduler and failed to reconsider the question based upon all of the evidence that had been accumulated during the period of the appeal, which is what is implicated by this court's recent decision in Bond. I'm having trouble here, Mr. Carpenter, with the policy. I'm sorry? I'm having trouble with the policy. Oh, the policy. We're trying to help the veteran, and yet you're telling us, well, let's force the board to withhold their benefits and wait until the whole claim is done, instead of deferring the scheduler decision because we have to wait and see how TDIU comes out, which, as we know, can be a lengthy reconsideration question. Why not do what the board did to help the veteran? Because it didn't help the veteran here, your honor. In fact, it harmed the veteran because it precluded consideration of all of the evidence that went to the degree of disability based upon the information that was submitted as part of his notice of disagreement. That may be true in this case, and you may be quite right that in this case it did that. But the only way we can correct this case is we can't reapply the facts to the law. The only way we could correct this case would be to enunciate a new rule of law that the Veterans Court and the board and the ROs would all have to follow. State that rule of law that you want us to enact. And why it won't cause the effect that I just mentioned. That rule of law needs to be that when there are issues that involve both scheduler and extra scheduler, those issues must be addressed as part of a single claim. And do you take the position that that will always benefit the veteran? Yes, your honor. And it will always benefit the veteran because the extra scheduler criteria allows for consideration beyond the scheduler criteria. But you recognize that that may defer an answer on the first issue for years while they do the second one. I'm sorry, your honor, it would not. Because if the agency had followed the law correctly in the first instance, based upon this court's recent decision in bond, then when they got Mr. Dunlap's notice of disagreement Why is his name Dunlap? Notice of disagreement with his social security determination and with his VA form 21-8940 indicating that he had been unemployed due to his service-connected psychiatric disability even prior to the time that he made his claim, they would have been required to consider all of that evidence from the date of the original claim. To my ears, you're making exactly the argument I said. What they're going to have to do is go back and have psychiatric readjustments to see if he really can work. They're going to have investigations to see if he ever did work during the last three-year period. They're going to have to then check those through VA sources. And how many years? I have no idea. Why not go forward with his scheduler adjustment, get him his benefits now, and we'll do the psychiatric adjustment with his two or three-year delay as the board sees as beneficial to the veteran. Your Honor, that is distorting both what happened in this case and what should have happened in this case. No, no, but remember, we're now in the hypothetical world that Judge Plager gave us. Is it going to help in every instance? And you said with such great confidence, yes. And your answer convinced me, no. And I just thought I'd let you know that. I'm sorry, then that was my fault, Your Honor. No, I think your answer was revelatory. It told exactly what would happen, which is remand for psychiatric analysis, and you want to hold the whole thing up for the next two years while that goes on. No, Your Honor, I'm sorry, but you have misperceived what happened here. What happened here? We're talking about what will happen in every potential case. In every potential case, Your Honor. In every potential case, in some of them they're going to have to reexamine the facts of whether employability is substantiated by those facts. But, Your Honor, with all due respect, the VA is obligated to consider and required at least by the case law below to presume that a veteran seeks the maximum benefit available under law. And the maximum benefit is both scheduler and extra scheduler. And by proceeding on a scheduler track alone and ignoring the extra scheduler ends up 10 years, 12 years later with an appeal that could have considered it and they did not consider the scheduler rating. It's all part and parcel of one claim. If it had been considered in the first instance by the VA on a scheduler basis and an extra scheduler basis, then that will benefit every veteran. The current case law is that the veteran must put that at issue. Most veterans do not understand the relationship between the scheduler rating and their entitlement to an extra scheduler rating. And you don't trust the board to do what's best for the veterans, what you're saying? I do not, Your Honor. Okay. That's a good point. You're in your rebuttal time. But that's born of more than 20 years of experience with the VA doing precisely what they did in this case, waiting until it's all done and then not going back and looking at the total record. Your point for Mr. Dunlap is clearly correct. The question, though, is did you represent him before the Court of Veterans' Appeals? Yes, sir. So you made that case before the court? Yes. Okay. And that was the issue in the appeal of what the board had decided. They narrowed the scope of the claim to... I'll reserve the balance of my time. Mr. Hontos. Good morning. It may please the Court. The Court should affirm the decision of the Veterans' Court because Rice does not require the Secretary to simultaneously adjudicate the issue of TDIU and initial scheduler rating. We know that, but why shouldn't it? Well, I think I would direct the Court to Rice and look at what Rice was doing. We'll accept the proposition that Rice did not mandate it, but he wants us to now mandate it. That's a different issue. Okay. To that point, I would say that that is going to create the types of problems that I was sensing from the Court about adjudications actually taking longer. And this rule may well be good for Mr. Dunlap. I'm not actually so sure about that. But the rule that Mr. Dunlap is advocating to the Court will be bad for the vast majority of veterans because there will be some sort of delay. The Secretary needs the flexibility to be able to adjudicate issues, pieces of claims, whatever you want to call them, at different times. This Court recognized that in Elkins, where it said, clearly recognized that that is an important tool for the Secretary to have, the ability to take a look at a piece of a claim, adjudicate that, get benefits flowing quickly to veterans, and if necessary, separate a piece off of that. Well, why wouldn't it be a better policy resolution to say, if you've got multiple theories presented, the Board should consider them all while they're argued, to get it resolved all at once, than if there's some unusual circumstance where the resolution of one theory might not be appropriate at that time, well, that could be the exception. But the rule would be that the theories would all be adjudicated once. As a practical matter, I think that the Court just needs to be aware of how things come to the Secretary. Oftentimes, evidence is presented initially, a claim is brought, and it's very common to have evidence that comes in later in the game. Records are discovered, the veteran submits additional materials. What would the rule do in that situation? That would be really a procedural havoc for the Secretary. So the Secretary needs flexibility. That would be the exception to the rule. The rule would be, if all the evidence is presented, that it would be considered, and not put off. That's one way to cut it. I would concede that. That that could be the rule. I think what the Court needs to look at is what it's doing here. And under the rule of law jurisdiction that Mr. Dunlap raises, the issue is not sort of a de novo what the law should be. The issue is, did the Secretary misinterpret the Veterans Court's decision in Rice? And the rule of Rice, if there is such a thing, is only that TDIU can be considered as part of an initial claim on the one hand, or as part of a claim for increased benefits. And Mr. Dunlap just totally ignores this either-or proposition. You're not suggesting that we couldn't reinterpret Rice, are you, Counsel? Well, the Court could, in a manner of speaking, reinterpret Rice. But I think that under the limited jurisdictional mandate, I think what the Court is really looking at, the focus of the Court- Judge Lynn raises the point, shouldn't we reinterpret Rice in order to set up a more beneficial result for the veterans generally? And I think that the answer is no, that the Court should be reviewing Rice and reviewing what happened in this case, and ensuring that the Secretary in this case got Rice right. That's where the Court's focus should be. And I think that even if the Court's focus was elsewhere, that it wouldn't necessarily be true that by hamstringing the Secretary, by limiting what the Secretary can do, by creating a blanket rule- It really isn't our job to decide whether the Board is pursuing the best policy or not, is it? We're not an executive oversight agency. We are a legal body trying to see what the law requires. I would agree with that completely. I would also just like to address the issue of prejudice. Obviously, Mr. Dunlap needs to show error and prejudice to prevail in an appeal. He cannot show prejudice. The first little piece of it would be that the Veterans Court, Joint Appendix 4, actually made a finding, sort of in the belt and suspenders ilk, and the Veterans Court said even if there was a problem with bifurcating, that there is no prejudice as a result of the bifurcation in this case. Mr. Dunlap can't get around that finding, so he's effectively asking the Court to revisit that issue. And even if the Court were to conduct some sort of a de novo, independent prejudice analysis, the same rules would apply. Mr. Dunlap had his claim, initial scheduler rating claim, adjudicated. That culminated in a 2003 board decision that was appealed all the way to this Court. Mr. Dunlap voluntarily dismissed that. And the TDIU piece has been adjudicated through the prism of TDIU. All of the evidence has been considered. And so ultimately, if there is a prejudice argument that Mr. Dunlap makes, it distills to that there is something magical about the simultaneous consideration of TDIU and an initial scheduler claim. There's no support for that in the law, and he certainly cites no authority that two separate but related issues must be adjudicated together. If there are any further questions, we'd ask that the Court affirm the decision of the Veterans Court. Thank you. Thank you. Mr. Carpenter. In terms of the prejudice to Mr. Dunlap, Mr. Dunlap was prejudiced because the board in the decision that was on appeal to the Veterans Court did not consider the claim that has been pending from the beginning, the initial rating to be assigned both on a scheduler and on an extra scheduler basis. In this case, the VA initially assigned a scheduler rating of 30%. That 30% rating was affirmed, and yet later in the proceedings, they assigned a 100% scheduler rating that predated the date of the board's decision. Then they decided that he was entitled at an even earlier date to an award of a total rating based upon unemployability. Can we address the question of prejudice under our standard of review? That's a very good question, particularly in the context of the rule of law consideration. We haven't raised it. I just don't know why. Can we? Boy. I take it that's enough. I don't think you can, Your Honor, frankly, now that I have had a moment to reflect. I think that unless somehow there would be some undisputed facts, and I think that the whole essence of this case is the disputed facts about what would have occurred had there been a simultaneous consideration of both scheduler and extra scheduler in the window from 1997 to 2002. And that was the original date of this claim. Mr. Dunlap has been trying since 1997 to get an initial rating more than the 30% that was assigned. And to the government's point that extra scheduler and scheduler are not the same, that is simply in defiance of the mandate of 1155. Congress told the VA in its scheduler rating to determine the impact upon the earning capacity of a veteran based upon disabilities that would be service-connected. The ultimate earning capacity impairment is an extra scheduler rating based upon unemployability. So to say that these two are not inextricably intertwined is simply inconsistent with what Congress told the VA to do when it set up its scheduler criteria. But I urge the Court to look at this Court's recent decision in Bond because this case arose in the context of Mr. Dunlap's original notice of disagreement with the original rating assigned. And that's where, with all due respect, Judge Rader, your point is incorrect in the context of Mr. Dunlap and in the context of veterans generally because he put at issue the fact that he was receiving Social Security for his now service-connected disability from 1994. And that fact should have been considered in the initial assignment of the scheduler rating from 1997 in addition to whether that entitled him to an extra scheduler rating. And what was precluded by the Board in the decision that was on appeal to the Veterans Court was consideration of that window on both a scheduler and an extra scheduler basis. Yes, sir. No, I was just going to point out to you, you're disagreeing with the government, not with the Court. Oh, I apologize then. Yes, I think you'd want to restate the way you made your argument. But thank you, Mr. Carpenter. Thank you.